UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| **KOHL'S DEPARTMENT STORES INC.**<br>N56 W17000 Ridgewood Dr.<br>Menomonee Falls, WI 53051<br><br>AND<br><br>**NITCHES, INC.**<br>10280 Camino Santa Fe<br>San Diego, CA 92121<br><br>             Plaintiffs,<br>       v.<br><br>**FORIA INTERNATIONAL INC.**<br>18689 Arenth Ave.<br>City of Industry, CA 91748<br><br>             Defendant. | Case No.:<br><br>**COMPLAINT FOR**<br><br>**(1) DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF COPYRIGHT;**<br><br>**AND**<br><br>**(2) CANCELLATION OF COPYRIGHT REGISTRATION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Kohl's Department Stores, Inc. and Nitches, Inc. ("Plaintiffs"), by its attorneys, alleges as follows:

**JURISDICTION AND VENUE**

1.  This is a civil action for declaratory judgment and other relief arising under the Copyright Act of 1976 as amended (17 U.S.C. §101, *et seq*., the "Copyright Act").

2.  This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. §§2201, 1331, and 1338, as it involves claims arising under the Copyright Act. Venue in this

I:\n\Nitches\Complaint.doc

1  District is proper pursuant to Sections 1391(b) and (c) and 1400(a) of Title 28 of the United States
2  Code.
3       3.      On information and belief, this Court has personal jurisdiction over Defendant in that
4  it is doing business in the District of Columbia, it is making claims of infringement in this District, it
5  is intentionally committing the acts hereinafter alleged in this District, it has substantial contacts
6  with the District, including selling or offering to sell a substantial quantity of products in the District,
7  it comes to the District on business, it visits retailers in the District in order to solicit business from
8  such retailers, it sends catalogs to retailers in the District, and it communicates with District
9  customers and potential customers for the purpose of inducing them to purchase products from
10 defendant. On information and belief, Plaintiffs further aver that Defendant has attended trade
11 shows in the District and/or close to the District, sold products on websites or to websites that target
12 and sell to persons in the District, advertised or obtained media coverage in publications that are
13 distributed in the District, and otherwise purposefully availed itself of the privilege of doing business
14 in the District. Defendant has also subjected itself to personal jurisdiction in the District by
15 committing torts against Plaintiffs and by attempting to obtain money from Plaintiffs in the District
16 by making false and frivolous claims against Plaintiffs in the District, by using interstate wires and
17 the mail that are subject to federal jurisdiction and that are located in part in the District.

**PARTIES**

4.    Kohl's Department Stores, Inc. is a corporation duly organized and existing under the laws of the State of Wisconsin, having its principal place of business at N56 W17000 Ridgewood Drive, Menomonee Falls, WI 53051. Kohl's Department Stores Inc. is the proper entity in connection with any claim that product infringing copyright was purchased by or sold in a Kohl's department store.

5. Nitches, Inc. is a corporation duly organized and existing under the laws of the State of California, having its principal place of business at 10280 Camino Santa Fe, San Diego, CA 92121

6. Upon information and belief, Defendant Foria International, Inc. is a corporation organized under California law, with a principal place of business at 18689 Arenth Ave., City of Industry, CA 91748 ("Defendant").

### ALLEGATIONS IN SUPPORT OF ALL CLAIMS
### Defendant's Claim and Alleged Rights

7. Defendant has asserted that it owns the Copyright Registration No. VA-1-243-904 and that the Copyright Registration is for the design show in Exhibit A.

8. Defendant has asserted that Plaintiff Nitches manufactured and sold shirts with the design show in Exhibit B, and that Plaintiff Kohl's purchased and sold shirts from Nitches with the design shown in Exhibit B.

9. Approximately a year and a half after first making its allegations against Plaintiffs regarding Exhibit B, Defendant suddenly disclosed its belief that Nitches manufactured and sold another shirt bearing the identical design as shown in Exhibit B, or a similar design. Such an "ah-ha" moment underscores bad-faith behavior by Defendant, apparently a tactic designed to require Nitches to read Defendant's mind about which stock motifs Defendant thinks infringe its design. Moreover, Defendant refused to provide any actual identification of this mysterious second shirt. All shirts or other items bearing the design shown in Exhibit B or a design similar to Exhibit B are referred to as Accused Products.

10. Plaintiffs requested that Defendant provide copies of the work and the registration certificate for the alleged copyright that Defendant alleges Plaintiffs are infringing.

11. Defendant refused to provide Plaintiffs with a copy of the design as submitted to the Copyright Office or a complete copy of the registration that it accuses Plaintiffs of infringing. Specifically, Defendant refused to provide a copy of both pages of the registration certificate or confirm that the specimen submitted to the Copyright Office in the application for the copyright registration is in fact identical to Exhibit A. Indeed, Defendant consistently claims copyright protection in a color illustration, but has yet to provide a color copy of the claimed copyright.

12. Defendant has accused Plaintiffs of infringing Defendant's alleged copyright, and specifically that Plaintiffs' sale and Nitches' trade show advertisement of the Accused Product is an infringement. Such accusation is real and actual. Defendant has threatened action against Plaintiffs for the alleged infringement of Defendant's alleged rights. Defendant asserts that it is entitled to an injunction against further sales of the Accused Product and that Plaintiffs are liable for damages.

13. Defendant stated that unless Plaintiffs comply with all of Defendant's demands, Defendant would file a lawsuit by no later than Tuesday, May 31, 2005. Despite Defendant's explicit threats, Defendant did not, prior to the filing of the Complaint herein, file or serve a lawsuit, apparently because the Defendant preferred to create uncertainty and delay in order to extort monies and information to which it is not entitled. This creates an actual controversy.

14. There exists an actual controversy within the jurisdiction of this Court that now needs to be, and must be, determined.

## FIRST CLAIM FOR RELIEF

**(For Declaratory Judgment of Non-Infringement of Copyright)**

15. Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

16. Defendant has accused Plaintiffs of infringement of Defendant's alleged copyright in violation of the Copyright Act, 17 U.S.C. Section 101, *et seq.* Such accusation is actual, present, and serious.

17. Defendant simply does not have any significant chance of prevailing on its copyright infringement claim. On information and belief, Plaintiffs deny that the Accused Product infringes Defendant's copyright for the reasons listed below, among other reasons.

18. First, it appears that Exhibit A is not in fact protected by Copyright Registration VA-1-243-904, in light of Defendant's refusal to provide a copy of the specimen submitted to the Copyright Office, and Defendant's refusal to provide a complete copy of the copyright registration itself.

19. Second, it appears that the copyright registration was obtained by fraud, in that Defendant did not disclose the pre-existing and public domain works on which it was based.

20. Third, Exhibit A is not a work of original creation. If the artist obtained a vintage third-party photograph and simply traced it, for example, then there is no copyright protection. Plaintiffs asked Defendant to provide the identity of the artist and information regarding the sources of inspiration on which he relied in creating this design, as well as dated draft artwork or date-stamped computer graphics files, and curriculum vitae outlining the artist's training in art development. Defendant refused to provide this information or documentation.

21. Fourth, Exhibit A does not have any or hardly any protectible elements – and only protectible elements can be the basis for an infringement claim. Exhibit A is a realistic, photographic depiction of "woody" cars on a beach with palm trees. Because it is merely a realistic depiction of what woody cars on a beach with palm trees would look like (the Defendant's claimed design is very simple, and does not incorporate any artistic element), the design is entitled to – at most – only very thin copyright protection. Defendant is obviously not the inventor of woody cars,

palm trees, or sand – therefore, the only copyrightable elements of Exhibit A could be the "new" components to these items – yet Defendant did not add any new elements. Thus, there can be no infringement.

22. Further, "woody cars on a beach with palm trees" is a stock image, commonly used in a plethora of illustrations. A 15-minute Google search reveals an extensive number of designs with a "woody car on a beach with palm trees" motif. Thus, Defendant cannot prevail in its infringement claim for the fifth reason that this design is unprotectible under the "scenes a fair" doctrine of copyright law (many similar photographs and depictions in the public domain).

23. Similarly, as a realistic photographic depiction, Defendant cannot prevail in its infringement claim for the sixth reason that, because this design is rampant in the apparel industry and otherwise, there is no copyright protection under the merger doctrine of copyright law (only a limited number of ways to realistically depict that scene).

24. Seventh, Plaintiffs are not infringing Defendant's copyright because Exhibit A is not owned by Defendant. While Defendant has claimed that one of its employees created this design, Defendant has provided no documentation justifying this assertion, and Defendant has refused to identify the name of the supposed artist, his location, and his employment status at the time of creation.

25. In addition, Defendant has refused to provide any document reflecting assignment of ownership rights from the artist to Defendant. According to Copyright Office records, it appears that Defendant has only – ever – created less than 24 designs in its entire existence. It seems unlikely that Defendant has an in-house art department, busily creating original designs. Thus it appears unlikely that Defendant is the owner of the design as a work made for hire, as it has claimed.

26. The need for all the above-described information and documentation is significant because it appears that Defendant has been sued a variety of times for trademark infringement and

copyright infringement. Moreover, the Defendant tried to register a trademark almost identical to the famous Ralph Lauren POLO trademark. There is a significant chance, therefore, that Defendant is improperly asserting intellectual property rights to which it is not entitled.

27. Eighth, Exhibit A is not substantially similar to Exhibit B.

a. Defendant has claimed that the Plaintiffs' design and Defendant's design uses a similar color palette. This is a fundamentally flawed accusation, because Defendant has never produced a color picture of Exhibit A. Even if the Defendant's design is colorized, and the colors are identical, however, the Defendant does not have exclusive rights to colors.

b. Defendant seems to find fault with the fact that Exhibit B's woody cars are at criss-cross angles, like Exhibit A. But Defendant does not have any exclusive right to line cars up so that one is facing right and another is facing left – perhaps if there were millions of cars with a particular line-up, like a DNA sequence, then Defendant would have cause to complain. But here, Exhibit B has done nothing but adopt a line-up that is standard, and can be seen every night during football season in drill team formations, for example. In any event, the placement of the cars is different, and understandable, given the greater number of cars in Exhibit B.

c. The number of trees is different.

d. The specific palm tree fronds and number of branches are different.

e. The trees are spaced close together in Exhibit B but not Exhibit A.

f. Exhibit B has bushes or mountains in the background, unlike Exhibit A.

g. The dimension of the scene is different. Exhibit A is more close up and Exhibit B is more distant.

h. Some of Exhibit A's cars overlap, unlike Exhibit B.

i. Exhibit B has a surfboard leaning against the car, unlike Exhibit A.

j. Exhibit B has straw huts, unlike Exhibit A.

      k.  Exhibit A appears to have clouds, unlike Exhibit B.

      l.  Exhibit B has 7 cars, while Exhibit A has 4 cars.

28.    The obvious lack of substantial similarity in the protectible elements is buttressed by Defendant's refusal to identify the supposed similarity points.  Plaintiffs asked Defendant to send exemplars of both the copyrighted work and the allegedly infringing work, and make a systematic comparison showing the points of similarity (for example, marking X on each exemplar in the spots where Defendant claims substantial similarity).  This type of analysis is standard practice in copyright cases.  See Northern District of California, Local Rule 5-9(b).  Defendant refused to do this.  Along the same lines, Defendant refused to have an impartial mediator evaluate the strength (if any) of the copyright claim.

29.    On information and belief, additional reasons exist for why Plaintiffs cannot be held liable for infringing Defendant's asserted copyright.

30.    Indeed, Plaintiffs sent Defendant an extensive, five-page letter explaining the defects with Defendant's claim, and invited Defendant to provide a refutation.  However, Defendant did nothing but make simplistic, accusatory statements that, paraphrasing, "this is infringement, the designs are practically identical," without providing any reasoned explanation.  Instead of providing a factual or legal analysis in support of its own (unspecified) interpretation of the Copyright Act, Defendant just told Plaintiffs that it would file a lawsuit.

31.    Solely to avoid a nuisance lawsuit, Nitches offered to pay Defendant a significant amount of money in exchange for a release of claims.  Defendant, however, refused, insisting that Plaintiffs disclose highly proprietary and confidential information and also pay a substantial amount of money.

32. There exists an actual and present controversy between Plaintiffs and Defendant regarding whether Defendant's alleged copyright is infringed. Such actual and present controversy needs a prompt resolution because it puts Plaintiffs' ability to sell the Accused Product in question.

33. By reason of the foregoing, Plaintiffs are entitled to a judicial declaration that Plaintiffs' Accused Product does not infringe Defendant's alleged copyright.

34. In the event that Defendant files a lawsuit against Plaintiffs in California, this Court should stay that lawsuit because this, the above-captioned lawsuit, was the first filed lawsuit and as such, it should first proceed. All claims between the parties are now at issue herein, and all such claims can and should be decided in this lawsuit.

35. The alleged infringement began after the date of Defendant's publication and before the date of Defendant's asserted copyright registration. Thus, under Section 412 of the Copyright Act, Defendant – in the unlikely event that it would prevails on liability - is not entitled to any award of attorneys fees or any statutory damages. In contrast, under a unique aspect of the Copyright Act, if Plaintiffs prevail at trial, they are entitled to recover their attorneys fees and costs from Defendant.

36. Along the same lines, in the unlikely event that Defendant prevails on liability, it would be entitled to, at most, Plaintiffs' *net* profits in connection with the claimed infringement, which means Plaintiffs are entitled to deduct a plethora of overhead expenses, including advertising, warehouse space, shrinkage, discounts, markdown allowances, miscellaneous overhead, federal and state taxes, etc. Similarly, in calculating profits, there is a mandatory deduction for elements of profits attributable to factors other than the copyrighted work, such as the value of the goodwill associated with the NEWPORT BLUE label, the quality of the fabric, the style of the apparel, and the like. In the end, Plaintiffs had minimal, if any, net profits in connection with any asserted infringing with the Accused Products.

37. Plaintiffs have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (Cancellation of Copyright Registration)

38. Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

39. For the foregoing reasons, Defendant should not have registered the design shown in Exhibit A, specifically because the work does not constitute copyrightable subject matter or fails to satisfy the other legal or formal requirements for obtaining copyright protection.

40. As a result, Copyright Registration No. VA-1-243-904 was improvidently granted and should be cancelled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief against Defendant:

A. A judgment that Plaintiffs' Accused Product does not infringe Defendant's alleged copyright;

B. An award that Plaintiffs recover their attorneys' fees as the prevailing party;

C. An award that Plaintiffs recover their taxable costs and disbursements herein;

D. An order staying the second-filed lawsuit if one is filed;

E. An order holding that Defendant should not have registered a copyright in the design shown at Exhibit A and therefore that the Copyright Office is directed to immediately cancel Copyright Registration VA-1-243-904 and any other registration for the design shown in Exhibit A and shall refuse registration of any pending registration for such design; and

F. Such other and further relief granted to Plaintiffs as the Court deems just and proper.

DATED: May 27, 2005

                _____/s/_____
                MEGAN E. GRAY (DC Bar No. 478479)
                ROYLANCE, ABRAMS, BERDO, & GOODMAN LLP
                1300 19TH Street NW, Suite 600
                Washington, DC 20036
                Tel: (202) 530-7365
                Fax: (202) 659-9344

                Attorney for Plaintiffs
                KOHL'S DEPARTMENT STORES, INC. and
                NITCHES, INC.

# DEMAND FOR JURY TRIAL

Plaintiffs Kohl's Department Stores, Inc. and Nitches, Inc. hereby demand trial by jury of all issues that are so triable.

DATED: May 27, 2005

_____/s/_____
MEGAN E. GRAY (DC Bar No. 478479)
ROYLANCE, ABRAMS, BERDO, & GOODMAN LLP
1300 19TH Street NW, Suite 600
Washington, DC 20036
Tel: (202) 530-7365
Fax: (202) 659-9344

Attorney for Plaintiffs
KOHL'S DEPARTMENT STORES, INC. and
NITCHES, INC.