**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KOHL'S DEPARTMENT STORES, )
INC., and NITCHES, INC., )
                                                      Plaintiffs, )
v. )    Case No. 1:05-CV-01078 (ESH)
                                              )
FORIA INTERNATIONAL INC., )
18689ArenthAve. )
City of Industry, CA 91748 )
                                        Defendant. )

**PLAINTIFFS' MEMORANDUM**

**(1)   IN REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO CONDUCT LIMITED JURISDICTIONAL DISCOVERY; and**

**(2)   IN SUR-REPLY TO NEW ARGUMENTS RAISED IN FORIA'S REPLY RE FORIA'S MOTION TO DISMISS COMPLAINT AND, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE[1]**

---

[1] Although Foria's pleading is merely entitled "reply in support of motion to dismiss," its content is expressly in opposition to Plaintiffs' motion for jurisdictional discovery, and Foria's counsel has confirmed that he believes that the pleading suffices to oppose Plaintiffs' jurisdictional-discovery motion. Gray Supp. Decl. ¶ 2. After Plaintiff's counsel informed Foria's counsel that she would be filing a reply brief on the jurisdictional discovery issue, Foria's counsel apparently thought better of this decision, and on July 18th, he filed yet-another opposition to the motion for jurisdictional discovery.

I:\n\Nitches\Foria\ReplyMTDFinal.doc

**Table of Contents**

I.    Introduction ............................................................................................................................. 1

II.   General Jurisdiction Exists Because Service Was Properly Made ............................................. 2

III.  Contacts with a Forum Are Not Subject To a "But He Told Me to Do It" Exception ............. 3

IV.   Specific Jurisdiction Is Established Due to Foria's Regular and Systematic Shipments to Stein Mart .................................................................................................................................. 6

V.    Foria's Contacts with this Jurisdiction Are Directly Connected with this Lawsuit ...................... 8

VI.   Washington is the Proper Venue; Alternatively, San Diego is the Proper Venue .................... 9

VII.  Jurisdictional Discovery Is Appropriate Here ......................................................................... 13

VIII. Foria's Request for Rule 11 Fishing Expedition Discovery Should Be Denied ..................... 16

I.     **Introduction**

Bewilderingly, Foria continues to assert that it has "no contacts" with this jurisdiction while simultaneously admitting (having now been caught red-handed by Plaintiffs) that Foria does in fact ship product directly to the DC Stein Mart. See, e.g, Foria's Reply, p. 1.[2] Similarly, Foria claims that Plaintiffs "offer little more than bare speculation and misstatements," and blatantly ignore the incontrovertible and now-admitted fact that Foria ships product to this District. See, e.g, Foria Reply, p. 1.

Momentarily putting aside the surreal nature of Foria's recent statement, Foria is not permitted to raise new arguments in a reply brief. Students Against Genocide v. Dep't of State, 257 F.3d 828, 842 (D.C. Cir. 2001)("repeatedly held that an argument first made in a reply brief ordinarily comes too late for our consideration").  Any arguments not raised in the moving papers are automatically waived.[3]

Despite this black-letter law, as warned in the "conclusion" section of Plaintiffs' Opposition to Motion to Dismiss, it seemed likely that Foria would try to raise new arguments in its Reply, given that Plaintiffs' Opposition so completely destroyed the moving paper's claim that Foria had "no contacts" with this District and that the case must be dismissed for lack of jurisdiction.

That prediction has come to pass.  The Court should disregard all of Foria's new arguments and deny Foria's motion to dismiss.  However, in the event that the Court wants to consider the new arguments presented by Foria, Plaintiffs file this Sur-Reply re the Motion to Dismiss, solely addressing Foria's new arguments.  Plaintiffs also concurrently file this Reply in support of their motion requesting jurisdictional discovery.

---

[2] It seems that Foria is playing with semantics and parsing words, insisting that the DC Stein Mart is not a "customer" because the payment check is written in Florida. See Mang Supplemental Decl. ¶ 3 ("It is absolutely correct that Foria has no customers in the District of Columbia").  But, a customer is commonly considered anyone who buys or receives product, regardless of where the check is written.  See http://www.gao.gov/policy/itguide/glossary.htm, defining "customer" as those "who have a business relationship with the organization--those who **receive and use or are directly affected by** the products and services of the organization. **Customers include direct recipients of products and services**, internal customers who produce services and products for final recipients, and other organizations and entities that interact with an organization to produce products and services."  (emphasis added).

[3] Bd. of Regents of the Univ. of Washington v. EPA, 86 F.3d 1214, 1221 (D.C. Cir. 1996)("[W]e have generally held that issues not raised until the reply brief are waived."); see also Charter Oil Co. v. Am. Employers' Ins. Co., 69 F.3d 1160, 1171 (D.C. Cir. 1995).

## II. General Jurisdiction Exists Because Service Was Properly Made[4]

For the first time, Foria asserts that service of the Summons and Complaint was improper and therefore general jurisdiction cannot be established under any circumstances because a particular kind of service is required under DC law.

Foria fundamentally misstates the law.[5] In a federal-question case (as opposed to a diversity case), the Federal Rules of Civil Procedure are not trumped by a state statute on service of process.[6] How could it be otherwise? The FRCP would have no basis for even existing if state laws established the only permissible procedures to be used in federal-question cases.

Plaintiffs complied with service of process as expressly set forth in the Federal Rules of Civil Procedure. In particular, FRCP 4(h), which sets out procedures for service on corporations, provides that service is accomplished by essentially the same way as service is accomplished on individuals, which is set out in FRCP 4(e)(1). That Rule sets out two alternate manners of service:

---

[4] Foria's only argument in opposition to general jurisdiction is this misguided "proper service" issue.

[5] Foria's confusion probably stems from a misreading, misunderstanding, or failure to read FRCP 4. This is borne out by Foria's delivery (by FedEx and certified mail) on Plaintiffs' counsel of the CD Cal. lawsuit without compliance with FRCP 4. As a matter of professional courtesy, Plaintiff's counsel sent a fax to Foria's counsel each time, alerting them that the service did not comply with FRCP 4, and invited them to correct the problem. See Gray Supp. Decl. ¶ 6 and its Exhibit C. However, even though opposing counsel gave it a written roadmap, Foria still has not served the papers. Gray Supp. Decl. ¶ 6.

[6] To avoid any further confusion, Plaintiffs note that, because this is a federal-question case (copyright cases are heard exclusively in federal court), not a diversity court case, the Erie doctrine does not come into play (i.e., the doctrine that federal courts in diversity actions apply the substantive law of the state in which they sit, and the corresponding dilemma of whether a law is substantive or procedural). Although not on-point because the case at bar is a federal-question case, it is worthwhile to recall that the Supreme Court held in the diversity case of Hanna v. Plumer, 380 U.S. 460 (1965), that a federal rule on service of process does not yield to a state rule.

"(1)   pursuant to the law of the state in which the district court is located, or in which service is effected…..;[7] or

"(2)…..by delivering a copy of the summons and of the complaint to an agent authorized by appointment of law to receive service of process."

Plaintiffs served Foria by personal, hand-delivery on Mark Fang, the individual registered with the California Secretary of State as part of Foria's incorporation papers as the person authorized to accept service of legal papers. See Gray Supp. Decl. ¶ 3-5 and its Exhibit A (proof of service) and Exhibit B (printout of filing with California Secretary of State, showing Mark Fang as Foria's "designated agent for service of process."). Thus, Plaintiffs complied the service-of-process requirement under FRCP 4(h) by virtue of compliance with FRCP 4(e)(2).

In sum, as expressly provided under subsection (h) of the Federal Rule of Civil Procedure 4, Plaintiffs *could have* chosen to serve the Summons and Complaint pursuant to DC state statute, but Plaintiffs did not *have* to choose that route, and did not. As a result, the DC statute on service of process is inapplicable.[8] Further, Plaintiffs complied with the only applicable rules regarding service of process in this case – FRCP 4.

Due to the reasons set forth in the Opposition to Motion to Dismiss (i.e., regular product shipments to the DC Stein Mart), and as a result of proper service of process, Foria is subject to general jurisdiction in this District.

**III.  <u>Contacts with a Forum Are Not Subject To a "But He Told Me to Do It" Exception</u>**

<u>For the first time</u>, Foria acknowledges its regular shipments to Stein Mart in this jurisdiction but argues that these contracts shouldn't count because Foria only made those shipments because Stein Mart requested them. From the get-go, this proposition makes little sense. If it were otherwise, a company that ships $100 million dollars of tobacco to cigarette purchasers in a

---

[7] This state-law route for service is actual two sub-options: service as permitted under DC law (i.e., "state in which the district court is located") or under California law (i.e., "state in which….service is effected…"). By virtue of the personal service on Foria's authorized agent, Plaintiffs have served in accordance with FRCP 4(e)(2) as well as in accordance with FRCP 4(e)(1), because Foria was served in California pursuant to its registered-agent-for-service-of-process filing with the California Secretary of State. CAL. CIV. PROC. CODE § 416.10 (2005).

[8] Foria's case citations to the contrary are diversity cases, which Plaintiffs have already explained are fundamentally different and inapplicable in this federal-question case (federal courts have exclusive jurisdiction over copyright cases).

jurisdiction could claim that it cannot be hailed into court there because the smokers "requested" that the product be shipped there.

In support for this novel "but he told me to do it" proposition, Foria cites only a single case, and that one from the Ninth Circuit, which hardly has a great track record for properly deciding cases.[9] In any event, the facts of <u>Omeluk</u> are clearly distinguishable from the present situation. That case concerned a Norwegian company who repaired a boat in Norway and whose deck-reconstruction repairs were allegedly faulty, resulting in a personal injury to a man in the Bering Sea in international waters. The <u>Omeluk</u> defendant's <u>only</u> contact with the State of Washington was a representative's attendance at cocktail party to celebrate the rebuilt ship and the Norwegian company's purchase (at the request of the boat-owner) of some electronics for the rebuilt ship. Everything else took place in Norway. Not surprisingly, the court found that it did not have specific personal jurisdiction over the defendant in connection with the man's injury.

Contrary to what Foria would lead this Court to believe, the <u>Omeluk</u> court did not hold that when product is shipped to a forum at the request of someone, the shipper is excused from jurisdictional power – rather, the critical point for the <u>Omeluk</u> court was the fact that "[the defendant] took no 'purposeful' action to cause the [product] to be located in [this jurisdiction]. <u>Id</u>. at 271. The court found it significant that the presence of the allegedly tortious product in the contested jurisdiction was "not part of the regular and anticipated flow of the products from the [defendant]." <u>Id</u>. at 271. In other words, the <u>Omeluk</u> defendant did not deliver the rebuilt ship or

---

[9] While Foria cites four cases for the proposition that "when a defendant's contacts with a forum are the result of the unilateral acts or instructions of another party, the defendant's contacts are not purposeful and thus do not satisfy the due process standard," [Foria Reply, p.10 n. 37] only one case concerns a "but he told me to" situation. <u>Omeluk v. Langsten Slip & Batbyggeri A/S</u>, 52 F.3d 267, 271 (9th Cir. 1995). Two of the cases are clearly inapplicable because the government was the other party involved, thereby invoking the "government contacts" exception. <u>Atlantigas Corp. v. Nisource, Inc.</u>, 290 F. Supp. 2d 34, 44 (D.D.C. 2003); <u>Freiman v. Lazur</u>, 925 F. Supp. 14, 24 (D.D.C. 1996). The remaining case, <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 475 (1985), cites the asserted proposition, but only as a general premise, and the court further states the more applicable proposition that "[s]o long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." <u>Burger King</u>, 471 U.S. at 476. Plaintiffs are particularly at a loss to understand why Foria spends as much time as it did in its Reply discussing the express "government contacts" exception to the DC jurisdictional statutes, when Plaintiffs expressly acknowledged in their Opposition, p. 6, n. 13, that jurisdiction could not be established that way.

any item whatsoever to contested jurisdiction, unlike Foria, which purposefully and regularly injects its product into the D.C. jurisdiction by virtue of its shipments to the DC Stein Mart.

Other than this inapplicable and unpersuasive district-court case from the other side of the country, Plaintiffs have not found any other case that supports Foria's "but he told me to do it" argument; Foria has cited none other, either. However, Plaintiffs have found a case from the District of Columbia that actually rejects this "but he told me to do it" argument.

In a trademark-infringement case, Stabilizierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib. Pty. Ltd., 647 F.2d 200 (D.C. 1981), the court found specific personal jurisdiction over the defendant, an Australian corporation that exported wines to two U.S. distributors – they in turn distributed the wine within the U.S., including to at least one liquor store in D.C. The defendant argued that it was not subject to DC jurisdiction because its wine was only in DC by virtue of the actions of its distributors; defendant itself did not ship to DC. The court rejected that line of argument, noting that the defendant had given authority to a distributor to sell wine in D.C. and that the defendant never curtailed the distributor's authority to distribute wine in D.C. The court concluded that the defendant has "thus chosen a course of conduct that renders sales of their wine here not merely foreseeable, but affirmatively welcomed. Unquestionably, they have a stake in, and expect to derive benefits from, a market for their goods in the District." Kaiser Stuhl, 647 F.2d at 205.

The Kaiser Stuhl court placed great emphasis on this. "We are convinced that when the 'transacting any business' language [of the DC jurisdictional statute] is read to extend to the limits of due process [as prior cases have required], it encompasses a case like the present one where a nonresident defendant ships goods to an intermediary with the expectation that the intermediary will distribute the goods in a region that includes the District of Columbia."[10] Id. at 205. In sum, the court held that the defendant was subject to personal jurisdiction "[a]s a consequence of their access to District consumers and the placement of their wine on a local retailer's shelf…" Id. at 205. Similarly, Foria directly benefited from having the Stein Mart store in DC sell Foria's products in this jurisdiction. Not only was it foreseeable that Foria's product would end up in D.C., Foria itself actually shipped the product into this District. Moreover, Foria took no affirmative action to stop or

---

[10] The court found that personal jurisdiction existed under both subsection (a)(4) of the District's long-arm statute (DC Code § 13-423), as well as under subsection (a)(1), as a result of the defendant's "persistent course of conduct."

refuse shipments of their product to D.C. Indeed, as noted in Mang's Supplemental Declaration, sales have been increasing in the years since 2003 (Mang Supp. Decl. ¶ 11). Foria was not forced to ship to this District. Foria's shipments to this District were not involuntary. As plainly put in Mouzovires v. Baxter, 434 A.2d 988, 992 (D.C. Cir. 1981): "Clearly, the most critical inquiry is not whether the nonresident defendant is physically present in the forum but whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum. As one court has stated, 'the operative consideration is that the defendant's contacts with the forum were **deliberate, rather than fortuitous,** so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise.'" (emphasis added).

Foria's hands were not tied; Foria was not a helpless waif that could not tell Stein Mart "no"; Foria affirmatively agreed with Stein Mart that Foria would ship to this District.

## IV. <u>Specific Jurisdiction Is Established Due to Foria's Regular and Systematic Shipments to Stein Mart</u>

<u>For</u> <u>the</u> <u>first</u> <u>time</u>, Foria acknowledges its regular shipments to the DC Stein Mart but argues that these contacts are insufficient to establish specific jurisdiction because these shipments are so small, they should be disregarded. Notably, however, Foria did not cite a single case for this proposition.

Specific personal jurisdiction is established under § 13-423(a)(1) by showing that the claim for relief arose from defendant's "transacting business" within the District of Columbia. There is no express quantity requirement in the statute (i.e., how much business is enough to constitute "transacting business"), but presumably Foria is claiming that there is an implicit quantity requirement. Yet, D.C. courts have recognized the trend toward liberalization of jurisdictional limitations, such that "[e]ven a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here." <u>Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.</u>, 355 A.2d 808, 811(D.C. 1976); <u>see also Shoppers Food Warehouse v. Moreno</u>, 746 A.2d 320, 331 (D.C. 2000) (quoting <u>Environmental Research</u> to state that "[e]ven a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here," and finding personal jurisdiction in the District for an accident in one of defendant's Maryland stores based on defendant's advertisements in the District); <u>Rhee Bros., Inc. v. Seoul Shik Poom, Inc.</u>, 869 F. Supp. 31 (D. D.C. 1994) (personal jurisdiction found under DC Code § 423(a)(1) even though defendant

had only one customer in the District and that only accounted for 3.6% of defendant's 1993 sales); Stabilizierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib. Pty. Ltd., 647 F.2d 200, 206-207 (D.C. 1981) (specific personal jurisdiction over Australian defendant that had an intermediary that sold only 28 cases of wine over a four-year time span, amounting to total sales of $747.20 in the District); Mitchell Energy Corp. v. Mary Helen Coal Co., Inc., 524 F.Supp. 558, 563 (D.D.C. 1981)(single act in the jurisdiction sufficient to "transact business" and establish specific jurisdiction).

Although Foria's claim (not yet tested by cross-examination) that it only sold .02% - .03% of its products into the District of Columbia may seem significant, it is worthwhile to recall that DC is an extremely small jurisdiction - DC only contains .002% of the US population.[11]  Similarly, Coca-Cola could not likely contest Rhode Island jurisdiction by claiming that only .00000000001% of its worldwide sales are made in that state – that isn't the point.  Jurisdiction is not established by whether a company's contacts here are large relative to all other contacts elsewhere.

It isn't merely common sense that requires a rejection of Foria's argument – that line of thought (that minimal sales do not satisfy the DC long-arm statute) was flatly rejected by the DC court in Stabilizierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib. Pty. Ltd., 647 F.2d 200 (D.C. 1981).  In that case, the defendant argued that any revenue derived from sales in the District was insubstantial, pointing to a total purchaser cost of $747.20 for the product sold in the District.  Id. at 207 n. 14.  The court pointed out that "[i]n absolute and percentage terms, [defendant's] characterization may be accurate.  However, revenue from sales in the District exceeds the District's per capita share of [the applicable wine-distributorship, which was divided by coasts].  Rigid adherence to the absolute or percentage approach defendants urge [is rejected]. **We…conclude that the 'substantial revenue' test may be satisfied, even when the amount of locally derived revenue is small in absolute and percentage terms, if that revenue exceeds the state's per capita share of substantial nationally derived revenue."**  Id. at 206.

---

[11] The estimated U.S. population based on the 2000 census is 281,421,906 (http://factfinder/census.gov).  The estimated population of the District of Columbia from the 2000 census is 572,059.  Id.  Therefore, the population of D.C. is 0.002 % of the population of the United States (572,059/281,421,906).

From the numbers provided by Foria in its supplemental declaration, it is apparent that Foria has a <u>ten-times</u> <u>greater</u> <u>concentration</u> in DC than one would expect (.002% of population versus .02% of Foria's sales).[12]  Proportionately, Foria is selling a substantial quantity in DC given the minute size of the jurisdiction.  To use the terminology of the DC court in <u>Kaiser Stuhl</u>, Foria's "revenue exceeds DC's per capita share of substantial nationally derived revenue."  <u>Id.</u>  Moreover, Foria's admitted $18,300 absolute sales number to this jurisdiction is hardly "microscopic" as Foria would like the Court to think.  Foria's Reply, p. 4-5; see <u>Kaiser Stuhl</u> with approximately $750 in sales.[13]

### V.     **Foria's Contacts with this Jurisdiction Are Directly Connected with this Lawsuit**

Thus, by virtue of Foria's shipments to DC, Plaintiffs have established the "transacting business" element of specific jurisdiction.  Foria disputes, however, that Plaintiffs can establish the second element, that Plaintiffs' claim arises from Foria's contacts with this jurisdiction.  Shockingly, however, although Foria disputes in theoretical terms whether Plaintiffs establish this element, Foria never denies that it shipped apparel with the at-issue copyrighted design to this District as part of its sales to the DC Stein Mart![14]  In fact, Foria's utter silence on this point is deafening.  Instead of directly addressing this fact, Foria tries to deflect the Court's attention by arguing about whether *Plaintiffs* sold the product that Foria claims is infringing in this District.  Foria Reply, p.10-11.  But the jurisdictional statute has nothing to do with a *plaintiff's* contacts – the statute addresses whether the lawsuit deals with the *defendant's* contacts.

By its conspicuous silence, one must conclude that Foria implicitly acknowledges that it did, in fact, sell the at-issue design in this District.  The Complaint contains many pages outlining the invalidity of the at-issue copyrighted design, which constitutes the basis for Plaintiff's two causes of

---

[12] Moreover, Foria's sales in DC are increasing, going from 0.02 % in 2003 to 0.03 % in 2004.  Mang Supp. Decl. ¶11.

[13] Plaintiffs cannot escape the irony that Foria has rejected Plaintiff's monetary settlement offers in the $20,000 range as trivial but nonetheless considers sales of a similar amount to deserve that characterization.

[14] Plaintiffs raised this factual issue in page 2 n. 5, page 3 (lines 7-10; 20-21), page 4 (lines 16-18), page 11 (lines 9-11) of its Opposition and the Wyandt Declaration ¶ 7.

action seeking that Foria's registration be cancelled and that Plaintiffs be deemed non-infringers.[15] See Complaint ¶ 7, 11, 18, 19, 20, 21, 22, 23, 24, 25, 39, 40 and prayer for relief.[16]

It is frivolous for Foria to claim that this case is somehow not about the at-issue copyrighted design and outright ignore the fact that Foria sold apparel to the DC Stein Mart bearing the at-issue copyrighted design. In sum, specific jurisdiction exists.[17]

### VI. Washington is the Proper Venue; Alternatively, San Diego is the Proper Venue

Nitches does not dispute that it has contacts with Los Angeles, just as Nitches does not deny that it has contacts with San Diego.[18] That is not the inquiry, however. The question before the

---

[15] Foria tries to cast doubt on cancellation cause of action in the Complaint, implying that Plaintiffs pulled that cause of action out of thin air. See Foria Reply, p. 16, n. 48. Once again, Foria is in error on the law, neglecting to find or mention 37 CFR § 201.7. Courts in this jurisdiction, and elsewhere, recognize this cause of action, and have accordingly cancelled copyright registrations. Sigler v. Nat'l Network of Asian and Pacific Women, 1987 U.S. Dist. Lexis 14800 (D. D.C. 1987) (court declared plaintiff's registered copyright null and void and ordered the copyright to be canceled); Cmty. For Creative Non-Violence v. Reid, 652 F. Supp. 1453 (D. D.C. 1987) (defendant's registered copyright declared null and void and ordered to be canceled)(reversed on other grounds); Langman Fabrics v. Samsung America, Inc., 997 F. Supp. 479, (S.D. N.Y. 1998) (court declared plaintiff's registered copyright invalid and ordered the Register of Copyrights to cancel plaintiff's copyright registration)(reversed on other grounds). See also 28 U.S.C. § 2202 ("[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment").

[16] Because Stein Mart is a customer of both Foria and Nitches, Plaintiff could be damaged by Stein Mart's purchase from Foria of apparel with the at-issue design rather than the Nitches design. See Opposition p. 3, n.6.

[17] Foria has not contested the fact that, if jurisdiction is proper here, then venue is proper here, pursuant to 28 USC 1391(c), 28 USC 1391(b), and 28 USC 1400(a). Foria nonetheless requests transfer of venue because it believes another venue is preferable.

[18] Whether intentionally or inadvertently, Foria miscites and mischaracterizes Nitches' SEC filing when Foria says, "Nitches operates a fully-staffed showroom in Los Angeles, from which it solicits orders from its eight major customers" [citing SEC filing]. See Foria Reply, p. 7. In fact, that SEC filing does not state that Nitches' LA showroom is "fully staffed" or that it "solicits orders from eight major customers," and Foria also neglects to mention its deletion of Nitches' New York office from those statements. More telling is the Mang Supplemental Declaration ¶18, where he acknowledges that an apparel company's showroom is essentially a façade, without much substance or presence, and does not constitute an "office" of the company, and that "no manufacturing or shipping is done at the showroom and orders are only occasionally taken there." In any event, the Nitches' LA location is for the company's BODY DRAMA line, not the NEWPORT BLUE line, which was the one involved in the alleged infringements. Wyandt Supp. Decl. ¶ 2. Nitches' LA "office" has no employees with knowledge of this dispute, and no documents relevant to this

Court is whether or not the mandatory seven-factor test establishes, by the necessary weight, that Plaintiffs' chosen forum (Washington or San Diego) must be rejected in favor of Los Angeles due to overwhelming considerations of convenience and the interests of justice.  Foria has not carried is burden of proof on this matter.

Foria has done nothing to dispute the black-letter law that Foria bears the burden of establishing that the transfer of the action is proper under 28 U.S.C. § 1404 (a).  Airline Pilots Ass'n v. Eastern Airlines, 672 F.Supp. 525 (D.D.C. 1987); Gemological Inst. of Am., Inc. v. Thi-Dai Phan, 145 F. Supp. 2d 68, 71 (D.D.C. 2001).  Foria also does not dispute that it must show that the balance of convenience is **strongly** in its favor to disturb Plaintiffs' forum choice.  National Bank of Washington v. Mallery, 669 F. Supp. 22 (D.D.C. 1987); Gulf Oil Corp. v. Gilbert, 330 US 501, 508 (1947).

Similarly, Foria does not dispute that Plaintiffs are not required to choose the most convenient forum, so long as it is a proper forum.[19]  17 Moore's Federal Practice, § 110.01[4][a] (Matthew Bender 3d ed.).  It is well-settled law that a case should not be transferred from a plaintiff's chosen forum simply because another forum may be superior to that chosen by the plaintiff.  And, again, Foria does not dispute that Plaintiffs' choice is to be afforded substantial deference (assuming jurisdiction exists).  Wilderness Soc'y v. Babbitt, 104 F. Supp. 2d 10 (D.D.C. 2000).

Significantly, Foria also does not dispute that Foria was required to present **facts** supporting the requested transfer by affidavits from witnesses – Foria did not so in its moving papers or supplemental papers.  El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 677 (D.C. Cir. 1996).  The affidavits must contain detailed, specific facts showing exactly how and to what extent the "convenience" factors weight in favor of transfer.  Mere assertions of inconvenience or hardship are insufficient (although, notably, Foria didn't even make mere assertions!).  It bears emphasis that Foria has not presented a single specific fact supporting the requested transfer to the Central District

---

dispute.  All of Nitches' executive and administrative functions are in San Diego.  Wyandt Supp. Decl. ¶ 5.

[19] In some places, Foria seems to be trying to lead the Court down the path of thinking that every plaintiff is required to choose the "most convenient" location or one that "best" serves the interests of justice.  See Foria Reply, p. 22, but that is, once again, a flatly incorrect statement of the legal standard.

of California, as opposed to retaining the case in the District of Columbia or transferring to the Southern District of California (or even Wisconsin for that matter). Indeed, Foria has <u>still</u> not even claimed in an affidavit that litigating this case in DC or in San Diego would be a hardship!

Foria still has not even bothered to enumerate the list of factors that the Court will weigh on this transfer question or provide a list of evidence in support of those factors. Foria's simple and conclusory statements in a brief (but not declaration) that "of course" and "clearly" Los Angeles is a better venue than DC or San Diego don't even come close to what is necessary.[20]

Notably, "[t]he most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses." <u>Pyrocap Int'l Corp. v. Ford Motor Co.</u>, 259 F. Supp. 2d 92, 98 (D.D.C. 2003). Foria has not identified a single witness, other than its artist, who would be inconvenienced by litigating in either San Diego or DC. (Obviously Foria cannot claim that Plaintiffs are inconvenienced, since they chose to file in DC, and are arguing in favor of this venue). "The most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses." <u>Chung v. Chrysler Corp.</u>, 903 F. Supp. 160 (D.D.C. 1995); <u>Rhee Bros., Inc. v. Seoul Shik Poom, Inc.</u>, 869 F. Supp. 31 (D.D.C. 1994). Another court found that the forum most appropriate to entertain the case was the one where the records were located. <u>Trout Unlimited v. United States Dep't of Agric.</u>, 944 F. Supp. 13, 18 (D.D.C. 1996).

Given that all of the witnesses and documents regarding this dispute, with the sole exception of Foria's artist, are in either San Diego or Wisconsin, there is zero basis to transfer to Los Angeles, as opposed to San Diego.[21]

Along these lines, it is worth noting that Foria has changed the statement in its moving papers, from the claim that the artist of the copyrighted design is located in "California" to the claim

---

[20] Tellingly, Foria continues to be mysterious regarding the identity or address of its artist, knowing no doubt that the first thing that Plaintiffs will do is check to see if he is listed in the "white pages" or to otherwise verify his location.

[21] <u>See</u> Gray Decl. ¶ 11- "The vast majority of the evidence in this case will be oral testimony from the Plaintiffs' accountants, designers, sales persons, and officers and documentary evidence regarding Plaintiffs' independent creation, sales revenue, cost deductions, overhead expenses, profit margins, all of which is located in San Diego and Wisconsin and will be presented by Nitches and Kohl's, who are obviously not claiming any inconvenience with the D.C. forum."

that the artist of the copyrighted design is in Los Angeles and is employed by Foria.[22]  Foria does not submit any declaration regarding how this case is connected in any other way to Los Angeles, despite making bald-faced claims.[23]  Again, other than the Foria artist, Foria does not identify any other witness or individual in Los Angeles pertinent to this case.  Moreover, Foria does not identify a single document in Los Angeles pertinent to this case.[24]

Most significantly, Foria does not dispute or submit any declaration refuting the Plaintiffs' declarations, establishing that the vast majority of the evidence will be oral testimony from the parties' accountants, designers, sales persons, and officers and documentary evidence regarding independent creation, sales revenue, cost deductions, overhead expenses, and profit margins, all of which is located in San Diego and Wisconsin.  Wyandt Decl. ¶ 10; Gray Decl. ¶ 11.

The closest connection to Los Angeles that Foria can postulate is the idea that witnesses and documents in San Diego would be subject to subpoena power of the Central District of California.  But Foria misunderstands the subpoena laws.  The only time Foria would need to be concerned with subpoena power is if needed to compel a non-party witness to testify at trial – yet, Foria has not identified a single non-party witness relevant to this litigation.[25]  Moreover, in asserting that all San Diego witnesses are subject to Central District of California subpoena power, Foria has made several unsupported and flatly incorrect assumptions.  First, Foria has assumed that all of Nitches' relevant witnesses are employees – wrong.   Wyandt Supp. Decl. ¶ 6.  Second, Foria has assumed that this

---

[22] Foria is vague on this, saying only "Los Angeles" or "Los Angeles area," so it is unknown if the artist is in the County of Los Angeles, the City of Los Angeles, or the greater Los Angeles area, which can encompass areas of Orange County, etc.

[23] On p. 24 of the Foria Reply, it states that Nitches sells the alleged infringements from its Los Angeles showroom, but provides no support, even on information and belief, for that statement, which is false.  Wyandt Supp. Decl. ¶ 4.  In the next sentence, Foria claims that Kohl's carried the allegedly infringing apparel in Los Angeles, but only cites Foria's unverified complaint as "evidence."

[24] Plaintiffs previously filed declarations stating that all of Plaintiffs' witnesses and documents in California are in San Diego and that litigating in Los Angeles would be a hardship.  See Wyandt Decl. ¶ 10, 12; Opposition p. 10.

[25] A litigant can issue a subpoena for documents in any federal court (not just where the case is pending), to provide documents or attend a deposition in that district.  FRCP 45(a)(2); FRCP 45(b)(2).  Further, a subpoena is not necessary to compel a party to testify (as opposed to a third party).  FRCP 30(g)(1) and (2).

case would be assigned to the southern-most courthouse of the four available courthouses in the Central District of California, which is a random assignment - wrong.[26]  It is particularly unlikely that this case would be assigned to that courthouse, given Foria's recently filed lawsuit against Plaintiffs in that district, which is assigned to the Western Division.  See Exhibit A to Supplemental Klingan Decl., showing assignment to the Honorable Percy Anderson, whose courtroom is located in the Western Division, at 312 N. Spring Street, which is 109.84 miles from the Nitches headquarters on Mapquest.

In short, Foria is simply incorrect to assert that all of Nitches' potential witnesses and documents are subject to the subpoena power of the currently filed (but unserved Foria lawsuit).  Moreover, Foria cannot unilaterally file a lawsuit (after filing the pending Motion to Dismiss) and claim that this case should be boot-strapped to that newly filed case.

Finally, Foria claims that Plaintiffs have not presented **any** (emphasis in original) evidence that Foria would be subject to personal jurisdiction in the Southern District of California.  That is, once again, incorrect.  On page 11, n. 22 of their Opposition, Plaintiffs stated, "Similarly, Plaintiffs could have filed suit in the Southern District of California; both jurisdiction and venue requirements vis-à-vis Foria would be established there for a variety of reasons (e.g., presence of Stein Mart stores within 50 miles of San Diego, as shown on the www.steinmart.com website (cities of Poway, Oceanside, and Temecula), and the previously established sales and shipments by Foria to Stein Mart stores)."  Moreover, Foria itself has acknowledged that its product is sold in San Diego, and Plaintiffs have independently confirmed this.  See Mang Declaration ¶2 (sales to Wal-Mart); http://www.walmart.com (store finder); Wyandt Supp. Decl. ¶ 7 (purchase of apparel with Foria's RN number at Stein Mart in Poway, within 50 miles of San Diego).

**VII.   Jurisdictional Discovery Is Appropriate Here.**

Even without the benefit of discovery, Plaintiffs came forward with actual evidence of contacts by Foria with this jurisdiction.  All of Foria's protestations as to its contacts with this jurisdiction have to be evaluated in light of the fact that Plaintiffs have already shown some of them

---

[26] See http://www.cacd.uscourts.gov/cacd/CourtDir.nsf/7fb63f818a3637998825681b000eaaa3?OpenView.  Foria's assumption appears to be especially self-serving because the courthouse hypothetically chosen by it is further away from Foria's location than the other three courthouses in the Central District of California.

to be false. Discovery and cross-examination in this context – where Foria has already shown itself incapable of determining its contacts without Plaintiffs' scrutiny and independently acquired evidence – is particularly appropriate.

In the first declaration submitted by Mr. Mang, he declared that Foria has "**never shipped** any goods to or received any payments from the District of Columbia." (emphasis added). Now, upon learning of Plaintiffs' purchase of Foria product in D.C., Mr. Mang has drastically revised his initial declaration. Mr. Mang now declares that he was unaware of the fact that Foria ships goods directly to a Stein Mart store in D.C.[27] Mr. Mang now also declares that Foria has not received any payment of any kind from a customer located in D.C. for a period of at least ten years, whereas he initially declared that Foria had "never" received any payments from D.C.[28]

Clearly Foria's own claimed diligence into its contacts with this District leaves a lot to be desired. As stated in the Mang supplemental declaration ¶ 6, "Before drafting my initial declaration, I spoke with my shipping and billing staff and researched shipping and billing records to determine whether Foria had any customers in the District of Columbia." Yet, Mang's detailed research did not supposedly expose the fact that Foria has regularly shipped several thousand dollars of product (almost $20,000) to this District over the past two years. Given the inherent computerization of databases used to track business activity, how is it that Foria missed substantial shipments to a D.C. Stein Mart store in its initial investigation? It took Plaintiffs to bring this to light. What about Foria's other self-acknowledged 700 customers?[29]

As noted in Plaintiffs' prior papers, a plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery to prevent the defendant from defeating the jurisdiction of the court by withholding information on its contact with the forum. El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996). Whether intentionally or not, Foria has already been found guilty of doing this, by its own admission.

---

[27] Supp. Mang Decl. ¶ 6.

[28] Supp. Mang Decl. ¶ 4; Mang. Decl. ¶ 4.

[29] It is worthwhile to note that Mang's supplemental declaration ¶ 8 acknowledges that Foria sells to two other retail chain stores where Foria delivers directly to the individual stores – Foria, however, declines to identify these other retail chain stores, or indicate they have stores in DC.

Foria argues that Plaintiffs can conduct jurisdictional discovery "only to verify allegations of specific facts" and then Foria continues, claiming that Plaintiffs have not provided this.[30] It is irrelevant that Foria has filed a vaguely worded declaration that purports to deny Plaintiffs' specific grounds for believing that Foria has even greater contacts than already established. Not only is Foria's credibility already in doubt as a result of the fact that it submitted an incorrect declaration, adamantly stating that Foria has "never shipped any goods to…the District of Columbia" (Mang Decl. ¶ 4), but the Court must construe all pleadings and affidavits and resolve all disputed questions of fact in the plaintiff's favor. Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1282-1283 (D.D.C. 2005); Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3rd Cir. 1992) (holding that plaintiff's right to conduct jurisdictional discovery should be sustained when factual allegations suggest the possible existence of requisite contacts between the defendant and the forum state with "reasonable particularity.").

The above-identified mischaracterized and withheld information by Foria, in addition to the above list of discovery requests, clearly sustains Plaintiffs' burden that it can supplement its jurisdictional allegations through discovery. Crane v. Carr, 814 F.2d 758, 760 (D.C. Cir. 1987). Therefore, Plaintiffs are entitled to jurisdictional discovery.

---

[30] Plaintiffs have already shown that a number of facts will be helpful to fully evaluating Foria's contacts with this jurisdiction: dates of shipment by Foria to the D.C. Stein Mart store, whether Foria goods bearing the alleged copyright has ever been shipped to the D.C. Stein Mart store, how the DC Stein Mart store returns unsold or damaged Foria product, communications between Foria and the D.C. Stein Mart store, whether any Foria agent visited the D.C. Stein Mart store to ensure its goods are being properly and advantageously displayed, whether Foria has the ability to decline making a shipment to the D.C. Stein Mart store, Foria's per capita sales figures for the East Coast to show that D.C. sales are far from insubstantial, the identity of the DC customer that Foria last received a payment from ten years ago (mentioned in Foria's Mang Declaration), the circumstances surrounding the loss of the D.C. customer ten years ago and any attempts to regain the customer, solicitations by Foria to obtain additional customers in D.C., other affiliates, such as 33 Degrees, in which Foria has an interest, and their contacts with D.C. (Foria claims this company is no longer in business but does not say when it ceased to exist), contacts of Foria's extensive domestic licensing program in D.C., contacts between Foria and May Department Stores Company, and whether such contacts result in Foria's goods being sold in D.C., all retailers to which Foria sells goods that have a D.C. presence, role that Foria's founder, Mr. Frank Yuan, plays in promoting the company, especially in D.C., etc.

**VIII.  Foria's Request for Rule 11 Fishing Expedition Discovery Should Be Denied**

Although nary once mentioned in Foria's original reply/opposition to Plaintiffs' motion for jurisdictional discovery, Foria requests in its supplemental filing that it be permitted to conduct discovery in an effort to collect evidence for a contemplated Rule 11 sanctions motion.  Foria similarly never requested that it be permitted to conduct such discovery in its Motion to Dismiss for Lack of Jurisdiction, despite Foria's adamant claims in that pleading that Plaintiffs had no basis for alleging jurisdiction in the Complaint.

Foria's discovery request is truly extraordinary.  Plaintiffs are unfamiliar with any case permitting discovery so that a party may collect suspected (but unsubstantiated) evidence regarding a Rule 11 violation.  Certainly Foria did not cite a single case in support for its request.  Indeed, Plaintiffs are unfamiliar with any ruling, from any court, in which a litigant even had the audacity to make a request for discovery to establish a vague suspicion of a possible Rule 11 violation.[31]  Foria's discovery request is particularly "out there" and unwarranted here, where Plaintiffs actually presented evidence (initially denied under oath by Foria) that Foria ships product to Stein Mart in this District.

Foria's request for Rule 11 discovery is also improper in light of Foria's stonewalling of Plaintiffs' efforts to resolve this issue prior to motion practice.  See Plaintiffs' Opposition, p. 1; Gray Decl. ¶ 3-5.

The Court should deny Foria's request for Rule 11 discovery.[32]

---

[31] Moreover, such a fishing expedition is particularly inappropriate here, where the speculative Rule 11 violation was regarding a sentence in Plaintiffs' complaint, on information and belief, regarding Foria's contacts with this jurisdiction, rather than some core, material component of the merits case.

[32] The Court can also deny Foria's discovery request on procedural grounds, for failure to submit a proposed order on that topic, in violation of Local Rule CITE.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7, Plaintiffs continue to request oral hearing on this matter.

DATED: July 19, 2005

                                          _____/s/_____
                                          MEGAN E. GRAY (DC Bar No. 478479)
                                          ROYLANCE, ABRAMS, BERDO, & GOODMAN LLP
                                          1300 19TH Street NW, Suite 600
                                          Washington, DC 20036
                                          Tel: (202) 530-7365
                                          Fax: (202) 659-9344

                                          Attorney for Plaintiffs
                                          KOHL'S DEPARTMENT STORES, INC. and
                                          NITCHES, INC.